WARREN GLUCK APPEARING FOR APPELLANT BINA YOUNG APPEARING FOR APPELEY BUILD BODY ENTERPRISES LLC AND JOSEPH A. FIELD APPEARING FOR APPELEY'S VANDEVCO LIMITED AND ORLAND LIMITED. Right. Very good. Thank you. All right. So I guess first I'm going to speak to the appellees, Ms. Young and Mr. Field. Have you agreed on how you're going to split up your time? I guess, Your Honor, I plan to take approximately 10 minutes and then I'll turn it over to Mr. Fields. Of course, some of that will depend on what arguments are being made, that's roughly our planned allocation. All right. Very good. Thank you. And then, Mr. Gluck, did you want to reserve any time? Yes, five minutes, Your Honor. All right. Very good. You have to keep track of your own time. We'll try to remind you when you come close to five minutes, but the clock is on the screen. So with that, Mr. Gluck, you may begin. Morning, Your Honors. You said you read the papers. I'm going to jump into the numerous salient issues here and I'm going to lay them out, firstly in summary, and then hit them point by point so that I can do this all within 10 minutes. We're here principally because this is a damaging order that needs to be reversed. It's bad policy. It's bad law. It can't be allowed to stand. There's no danger like someone who believes in their own good faith intention. I have no doubt that the trial court believed that what it was doing was the right thing, attempting to simplify issues and even attempting to put Cerner, my client, in a position of less harm. But unfortunately, it didn't work that way. And unfortunately, the law of forum nonconvenience, which implies many cases beyond the bankruptcy realm, has been pushed past the breaking point here. There are four issues I'd like to address to point this panel towards. Firstly, there is no dispute here that the UAE, the form into which this case was finally dismissed, is an inadequate form. The only way the trial court could get around this was by saying that between the UAE and presumptively some combination of Washington and Oregon state courts, there would be in concert an adequate forum. It's just not the test. It's just not the law. It's creative, but it's impermissible. I'll also state the parties never briefed the concept and the parties never argued the concept at oral arguments. It can't be allowed to stand. Secondly, even if it were, the effective sole case law basis, and the court specifically notes there's no case law like this, but is the decision is completely in opposite. In that case, there were factual findings that the sole reason the New York plaintiff had been entered was to manufacture subject matter jurisdiction. Whereas here, the record is filled with the good faith intent of Cerner in bringing this dispute in Washington, which is where the parties first agreed it should be disputed. Thirdly, the court abused its discretion, unfortunately, with respect to its analysis of the public and private interest factors, most specifically by getting some core facts wrong. Among these are the contention that the UAE courts not decided the issue of the forum selection clause. Among these are the incorrect assertion that in order to prevail on the quasi-in rem, the direct claims against Bell Body, that Cerner needed to pierce the corporate veil. Both of these facts, and there are other ones, unfortunately, that were just plain wrong, are highlighted in the opinion. We're not grasping at straws here. It's just not true that the corporate veil needs to be pierced. Cerner had a slam dunk case in state court, and then before Judge Heston, when she denied the motion to remand. We will be winning the veil piercing alter ego case. Judge Heston has denied motion to dismiss at least two motions for summary judgment. We're heading to trial and she had to appoint an examiner. She's probably ruling this forum non-convened decision because the examiner needed to be appointed because there had been no decision on whether the alter ego in question was subject to personal jurisdiction and is refusing to participate in the defenses at issue. These are all major problems. On top of it, again, all good faith, but the court's forum FNC decision, forum non-convened decision, cannot exist in the same room with the court's remand decision. She said in the remand decision, we are entitled to have one forum where this can all be resolved. In the forum non-convened decision, aside from the fact that it's impermissible, she's saying, well, between these three forums, you've got complete relief. It can't fly. First, I would like to take this forum splitting concept right ahead because the panel could end analysis there. I urge that it doesn't because these other issues are important. They compel reversal, not merely remand. Well, I mean, isn't the first question whether there's an adequate and available alternative for him, right? And so she decided that there was because the unique dispute regarding whether or not the guarantee is enforceable could be determined in the UAE and based on her discretion and applying the public and private factors that that was fine. But the fact that your client filed a proof of claim alleging alter ego in the bankruptcy case allowed that portion of it to be determined in the bankruptcy court. And so, you've got to get past that before you even get to the public private factors, it seems to me. Well, we completely agree. And that's the point. What she what the trial court did was decide that the UAE was a available form in the face of the undisputed contention that the third and perhaps most important cause of action, the declaratory and junk mandatory injunctive relief that Bell body provide that insolvent Bell body, who has many, many creditors provide security to Cerner, it cannot be enforced in the UAE. Cannot. So she determined that not withstanding this failure, if the UAE court were to merely decide the issue of liability, and then Cerner takes that liability decision to again, there's no subject matter jurisdiction to a state court in Washington and a state court in Oregon, collectively, Cerner would have a remedy between the three courts, but the UAE court can't force Bell body to give the security in question, even though that's what it is issue in the contract. And that's what the contract what's the security in question that you're trying to get? Because if it's an asset of the bankruptcy estate, you can't get it. That's true. And this is where the trial court made its fundamental error. Counsel, I want to because I have the same question, Judge Brandon, and you're not not answering it. What is security? Security are Bell bodies interests in the debtor, not the debtors assets. But there are a whole variety of very valuable interests in the debtor, both debt and equity, which is all all all encompassed in in the preceding bankruptcies, correct? You see, that's where it's not true. Assets of the debtor, the $6 million in the escrow account, the remaining real property, and the debtors assets are encompassed in the bankruptcy. But the Bell bodies interests, including, by the way, the right to receive the $6 million in cash, the right to receive future sale proceeds, their myriad litigation claims, which we all know, as the Sacklers can be extremely valuable when you're talking about breach of duty. Those are the assets that the quasi in rem action is going after. And those are the assets that Washington law clearly and unambiguously. And this was briefed to the trial court clearly and ambiguously acknowledge are both attachable and executable within the jurisdictions. Back up there, because explain to me, my understanding is Bell body doesn't have a it runs through Willamette. That is a disputed fact, but be Washington law without piercing the corporate veil. And this is where the trial court got it wrong, permits the attachment and execution on specifically indirect interests. There's case law going back 100 years to this effect. And none of that is implicated by the debtor. Just because I'm running very short on time at this point, I need to hit the harassment case where briefly this is the only case that the trial court could look to and did look to for its proposition that, hey, no harm, no foul. If I knock off this security claim, the specific performance claim, but that's completely an opposite. In that case, the court explicitly as opposed to implicitly severed a defendant who had already been convicted criminally, the conviction was restricted to Cata and had within the record had been a judge, absolutely bankrupt. They're judgment proof. There was no harm, but here there's real harm. We wouldn't be here if there wasn't. On top of it, the court misapplied the law on the balancing of the interests. As a foreign plaintiff, it is true that Cerner is not entitled to the most extreme deference with respect to its choice of form, but that doesn't mean it's entitled to none. As Judge Pauly notes, as every court in the Ninth Circuit who's looked at the issue notes, that the question that then must be addressed, and again, there was all seven minutes of the oral argument on the FNC question, and none of this was in the UAE by Cerner, but it didn't look to whether Cerner had a good faith basis for bringing the action in Washington, and here it did. Cerner relied on the Vancouver Center. The original draft, which is in evidence of the guarantees at issue named the Western District of Washington as the form in which all disputes under these guarantees would be litigated. There's nothing there about the Vancouver Center. So this was core. On top of it, within the UAE, and it's within the record of the court, Valvadi's not doing so hot. It's got all these debts to these banks. So in terms of getting this security, we need to do it here. We need to be issued security. Within those legal errors, and they are serious ones, because zero on deference to the plaintiff's form, zero even analysis on the reasons. If she had said, well, they say this, but no, it's outweighed, it would be one thing, but it's zero deference, clearly erroneous. That's the standard here, and that's where I'm trying to urge the court to walk away with the distinct impression that a mistake has been made because one has been made here in good faith, but a serious error. The court has it right. As soon as you decide that the UAE is not an adequate form for this relief based on the unopposed statements of UAE counsel, that's the end. On top of it, we have the failure to even analyze the deference issue, the failure to analyze in any way Cerner's good faith interests, and two really core errors. The first was the mistaken belief that alter ego or veil piercing was required to sue Bellbody. It's just not. There's a hundred years of Washington precedent, which says absolutely not. Now this, I did say to the trial court. She didn't get it done, but it's right. You do not need to pierce the corporate veil. The state court understood that very well. So she got the core issue. All of these parties have been litigating about jurisdiction for five years. She got the core factor. We did not need to pierce the corporate veil. The Washington law permits for the indirect interest to be attached, including, by the way, the management of this chapter 11 case filed on the eve of a continuation of a trial where the last judicial act was walking off the bench in disgust at the revelation of TRO violations, another place where Cerner was harmed. Because now, how do we address the myriad TRO violations worth millions of dollars and contempt of court without this hearing? The answer is maybe you can bring an independent action, but we shouldn't have to. We shouldn't have to pierce the corporate veil to gain access to assuming they even are. And there is a major question in the case as to whether these entities are valid or even exist. And lastly, it's not about relative convenience. It's not about which is more convenient. It has to be so unjust, so inconvenient for the defendants that it can amount to injustice. There's no inference of form shopping here. And the court didn't even mention the 20-year, $100 million history of Belbody in this jurisdiction, writing letters to the mayor's office. The notion that this was a fundamentally inconvenient form when it agreed in the guarantees for actions all over the world, wherever it had assets, and they're going to say all means none. That can't be right. We've litigated that already in 9th circuit. All can't mean none. The guarantees contain actions, jury trials, which don't exist in the UAE. The intent of the governing documents was specifically to allow actions like this. And for the future, you've got worldwide guarantees. And suddenly there is a court stating that you can't enforce those guarantees, notwithstanding they're clear terms in the place where the guarantor's assets are located. Major problem. With that, I would like to reserve my last 15 seconds, if the court wouldn't mind. All right, fine. All right, Ms. Young. Good morning, your honors. Bina Young here for the Pele-Belbody. Before I start, I just want to address a couple of the statements made by counsel and questions by the court, including whether there was any security at issue in this case. And I think your honors hit it right on the head, and that's that there was no security here. This is a situation where there's no security agreement, no perfected filing. And I think the only reason that these alter ego claims were brought the way they were brought was to serve as a remedy. And that remedy could not happen before the original liability under the guarantees were established. And I bring that up now because I think that goes to kind of one of the fundamental disagreements that we have with Cerner here, which is what is the scope of the litigation? And the scope of litigation, in our view, was to determine liability under the guarantees, which I think Judge Heston properly determined should happen in the UAE, where the contract was signed, where all the parties are located in headquarters, and where all the witnesses and documents were. I do want to bring this back to the narrow issue that is on appeal before this court today, which is whether Judge Heston abused her discretion in dismissing this case for FNC. And the standard of review is clear. This panel must affirm unless it believes that there is a clear error of judgment. And under these facts, I just don't think that the panel can make that finding. It seems to me the issue arises, I'm going to direct you back to this adequate alternative forum that's available concept. You know, the judge didn't transfer, didn't dismiss and say the whole thing could be litigated in the UAE. Because the bankruptcy debtors could not be in her determination. And she didn't actually sever it either. She didn't sever the claim. She said, it's okay, because there's an alternative location for the dispute regarding alter ego to be determined. And that is here because Cerner has filed a claim and we can litigate, we can do the claim litigation. And this was happened after the remand motion was decided. But there wasn't an actual severance. Is that proper under the law? I think it's proper because there was already a pending claims adjudication process in place in the context of this bankruptcy. And so severing would have not added anything other than possibly moving the alter ego claim into a contested matter proceeding, which already existed as part of the claims adjudication process. So even though there was no technical severance, what you're saying is, there isn't any issue or there's harmless error if that because the alter ego claim, while dismissed in the one proceeding is able to be litigated in the other. That's correct. Yes. And I do want to touch just briefly on this idea of an alternative adequate forum that your honor raised. And specifically, I want to call the court's attention to a Supreme Court case that wasn't discussed by the parties, but is I think informative nonetheless. And that's Atlantic Marine Construction. That's 571 U.S. 49. And this is a Supreme Court case from 2013 that specifically discusses that particular factor, adequate alternative forum and the FNC analysis in the context of a situation where the parties have a contract that addresses forum. And so most of the cases, I think that discuss FNC address a variety of situations, which typically involved torts. These are unwilling plaintiffs or defendants. They find themselves in a roped into litigation somewhere far away because of some unfortunate event, like a plane crash or a boat accident or a Ponzi scheme. But what we have here is different because we've got two businesses headquartered in a foreign country in the UAE who could have seen this dispute happening because they signed contracts with each other and those contracts addressed where those disputes needed to be resolved. And what I'm referring to here is the language and the guarantees, which state, depending on which version you're looking at, either the English or the Arabic version, that disputes must be either must be exclusively resolved in the UAE or the parties consent to the UAE as forum. There's a dispute about that, and that's why the judge considered the both the public factors and the private factors after determining that it was an adequate alternative forum. Yeah, I believe that's the case as well. But I think the Atlantic Marine case is very informative because of the weight it had a Virginia corporation and Texas corporation that had a contract with a forum selection clause. The plaintiff should have filed in Virginia and instead filed in Texas. And what the court discussed in that case was the application of the FNC analysis under a venue transfer motion, but it did acknowledge that those factors the same for an FNC motion. And what they said about the adequate alternative forum piece of the court's analysis is that while generally speaking, a plaintiff would be afforded deference in its choice of a forum and a foreign plaintiff would be afforded less deference in its choice of a forum, a plaintiff that has agreed to a specific is not what it contracted for. And so, with respect to that factor, I think this case is very informative given that the appellant here attempted to file in a place that was not mentioned even once in the underlying contract. And to the contrary, there is a mention of the UAE as being the forum where the parties need to resolve their disputes. Right, that has limited usefulness really because there is a dispute between the English and the Arabic versions of the contract about the choice of venue. And I'm not arguing that this case is the end-all be-all in this situation, but what I am saying is that given the fact that the appellant here did acknowledge in a contract and it signed at least one version where it said that exclusive jurisdiction should and venue should exist in the UAE, it's very difficult to see how it can come back now and argue that that venue is not convenient or is not the appropriate forum for it to bring its claims. And so, I just wanted to mention that to the court because I don't think it was really addressed in the party's briefing, but I think it is applicable in these circumstances. And so, you know, had Judge Heston made a finding as to whether the Arabic or the English version was controlled, she probably could have, as your honor mentioned, not even addressed the private interest factors, but she did do that in this case. And I think that her findings were well supported by the record. About Mr. Gluck's argument that she gave absolutely no deference to the plaintiff's choice of forum. I think she did give some deference to the plaintiff's choice of forum. I believe she specifically recognized that a foreign plaintiff is not entitled to as much deference, but it is entitled to some deference. But I think what she found, and rightfully so, was that the other factors, the public and private interest factors, weighed against that choice that was made by the factors that you'd like me to address. I think we've submitted a pretty detailed briefing on those issues. And at this time, I'll turn it over to my counsel, Mr. Fields. All right. Mr. Field, you are on mute. Good morning, your honors. And I'm the debtors chapter 11 counsel here. And I'd like to talk about this from a bankruptcy perspective. And I think Cerner's misunderstanding here is probably because Cerner hasn't analyzed this from a bankruptcy perspective. I think the filing of the chapter 11 cases changed everything, as Judge Heston noted. On February 10, 2021, Cerner filed a proof of claim, and it filed as a general unsecured creditor. So to the questions the court asked of Cerner, where Cerner is asking for security, saying nobody guaranteed its security in the debtors, here Cerner comes in and files an unsecured proof of claim. There's no evidence that either of the debtors are in privity of contract with Cerner. In fact, Bellbody, as the record shows, is the owner of a subsidiary called Bellbody Engineering, a UAE company, which is the owner of a subsidiary called Willamette Enterprises, like Cerner Middle East, a Cayman Islands entity, which is the owner of the debtors. Cerner is arguing that under its guarantees on which it is in privity of contract with Bellbody Enterprises, three levels above either debtor, it is entitled to, and it has sued in Washington for security and these other interests in the debtors by its own admission and its own assertion. Cerner is at best a general unsecured creditor. The debtors objected to Cerner's proofs of claim on February 24th, 2021, and the court has scheduled an evidentiary hearing on that issue. Cerner's proofs of claim as support rely on Cerner's state court complaints, and those are really two lawsuits wrapped into one. The focus on the bankruptcy court is this equitable remedy of outside reverse veil piercing. It's called outside reverse veil piercing because Cerner Middle East is an outsider. It's not a shareholder. It's not a creditor of the debtors. It's reversed because Cerner Middle East has chosen to sue a subsidiary for the alleged liability of its parent. So that's one component. Normally in the collection process or in our claims process, we see a creditor sue its debtor and obtain a judgment and then proceed to enforce that judgment. Here, the state courts in Oregon and Washington and appellate courts and the U.S. District Court wrestled with the issue of personal jurisdiction. And finally, what's not in this but the court can take judicial notice of. We heard talk of this examiner's report. I think it will show and it's in the bankruptcy court record. On January 31st, 2022, Cerner Middle East filed litigation on the guarantees against Bellbody Enterprises in the United Arab Emirates. That seems to obviate this entire appeal and confirm Judge Heston's findings that in fact, there is an adequate alternate forum because that litigation is now ongoing. In terms of jurisdiction, it's hard to imagine how the bankruptcy court would have any jurisdiction over a contract dispute between two foreign entities, Bellbody Enterprises and Cerner Middle East, which did business in the United Arab Emirates, which contracted to have their dispute resolved under United Arab Emirates law. And Judge Heston made significant findings on the record regarding where the witnesses are, negotiated the contracts, where the documents are, the costs of trying to litigate that here, bring the witnesses here, translation, determining the United Arab Emirates law. And so it seems with these two separate issues that Cerner Middle East chose to shoehorn into one, Judge Heston got it right. All the bankruptcy related issues on this alter ego will be fully adjudicated in the forum to which Cerner consented to jurisdiction in the contested case hearing. And separate and apart, Cerner Middle Arab Emirates under its law, where all the witnesses, where all the occurrences happened to determine whether or not there is liability. If the UAE court makes that determination, Cerner Middle East will have full due process here with adjudication of its claim in the bankruptcy case, and it will have access to payment under the chapter 11 plan. As for these interests in ownership of the debtors, that's in the record, that's the ownership is in the Cayman Islands. The bankruptcy court has no jurisdiction over non-debtor property in a foreign jurisdiction. Thank you. All right. Thank you. Anything further, Ms. Young? You've got a few seconds. Just that we asked the panel to affirm the decision below. Thank you. All right. Very good. Thank you. Mr. Gleick, you got 15 seconds or 10 seconds. What are you going to tell us? You're muted. The fact that there's two cases is exactly the point. It's the defendants in the trial court that erroneously shoot one into one case. There's a big piece missing. Just think if we don't prevail on the alter ego claim, we could get Bellbody's interest in the six million. There were wider details in progress for that six million to be sent directly to Bellbody. The court has it wrong. By the way, in the UAE, the court dismissed the case claiming that it was an exclusive form selection clause and that the statute of limitations would run. I would suggest that Judge Heston seems to have overlooked those two supreme trial and appellate court decisions because she made as a condition of the forum non-convenience dismissal consent to statute of limitations. There were decisions on this already. More importantly, she didn't look at whether there were actually any UAE defenses. The contracts speak for themselves. Everything was waived. It's an unconditional guarantee. The witnesses here are both in the United States, White and El-Hindi. Thank you. You're over your time. So thank you. This matter will be submitted and we'll issue a decision shortly.
judges: BRAND, SPRAKER, GAN